Dayton, J.
A writ of attachment was issued out of the Warren Pleas, at the suit of the above named defendant, returnble to the term of June last. The sheriff executed said writ, by attaching property to the amount of two thousand eight hundred dollars, on the 5th day of March last. On the first day of the June term, certain of the creditors of Blair, came before the court, to present their claims against him, pursuant to the directions of the attachment act. The sheriff having neglected to return the writ, was ruled by the court, on application in behalf of these creditors, to do so. Whereupon he made return thereto, that the same was satisfied. No application having been made to discontinue, and the creditors having presented their claims, they called upon the court to appoint auditors, direct advertisements &c. agreeably to the act of the legislature. This motion was resisted by one Robert Blair, (who became an execution creditor after the service of the writ of attachment, but before the return thereof,) and was denied by the court. This application for a mandamus, is made in behalf of these creditors, claiming generally under the lien created by the attachment, and opposed by this subsequent execution creditor.
The agreement between the parties out of court, certainly did not operate as a discontinuance of the suit. The duty of the sheriff was clearly pointed out in the body of the writ itself; he was to execute it and make return of his proceedings thereon to the court. There was no power in the parties supersede or dispense with this duty; nothing which they could do, could in any shape or way alter or modify the terms of the writ itself. The suit was regularly commenced, and there was but one mode known to the law by which it could be discontinued, and that was on motion in open court, and by a regular entry of such discontinuance, when granted, in the records. It is perfectly evi *153 dent therefore, that this suit was pending in the Warren Pleas, when these creditors presented their claims to that court, for allowance.
By the seventeenth section of the attachment act, Rev. L. 355, it is enacted, “ uüat the plaintiff in such attachment, shall not be permitted to discontinue the same without the consent of or satisfaction made to each of the said creditors who shall have applied to the court or auditors as aforesaid.” What possible escape therefore, is there from this section of the act ? There has been no motion to discontinue even to the present time, and the creditors in question are within its very terms. And so too these creditors are within the spirit of this act. The intent of the statute was to bind by a summary proceeding in rem, the estate of an absent or absconding debtor, for the general and equal benefit of all his creditors. As soon as the writ is served, the property is in the custody of the law, and the service operates as a lien in behalf not only of the plaintiff-in attachment, but of every other creditor who presents his claim before there is a legal discontinuance.
It could never have been the intent of this act, that a suit by writ of attachment issued and served, could be thus arranged between the parties out of court. If so, it might put this wholesome remedy, in abeyance until the return day of the writ, as to all the other creditors. It cannot be known before that return day, that it will not be returned and regularly proceeded upon; and yet, after one suit is commenced by attachment, it stops every other creditor from proceeding in the.same county by attachment, until the first suit is discontinued, see Harris v. Linnard, et al. 4 Hal. 58.
Again a writ of attachment out of the Supreme Court, or Court of Common Pleas, is by the thirty-fourth section of the act, a supersedeas to all attachments issued by a Justice of the peace, undetermined at the time of serving the writ; and the sheriff or his deputy is authorized to take the goods and chattels attached by the constable, into his possession &c. and the plaintiffs in those attachments are entitled to their several debts and costs, in proportion with the other creditors ; and under the act prescribing the mode of proceeding in the higher oourts. How then can the proceeding in the higher court be stayed by a com *154 promise between the defendant and one only of the parties interested ? Or if stayed, how is the constable to repossess himself of the property taken from him by the sheriff? Where is the act which authorizes or. requires him.to do so? And if he should do so, what compensation is allowed him for the additional labor and inconvenience? If the property be'lostor wasted in the mean time, who is responsible? Difficulties meet us at every step.
My opinion is, that it was the duty of the court to have appointed auditors, directed advertisements. &c. pursuant to the attachment act; and that having on application, refused to do so, a mandamus issue requiring that court to proceed according to law.
Hornblower, C. J. Fore, J. and White, J. concurred.
Neviixs, J.
An attachment was issued against the defendant, returnable to the term of June 1840, and served or levied on the 4th of March preceding. After the service of the writ, and before its return, Robert Blair, the defendant’s brother, paid or satisfied the plaintiff’s claim, and obtained an order" from him directing his attorney, to discontinue his suit. A.t the term to which the writ was returnable, the sheriff having made no return thereof, other creditors applied to the court for an order on him to return the writ. Upon this order, he returned the writ with an indorsement, that the plaintiff had been satisfied his claim. Upon this return being made, these creditors or one of them, applied to the court to appoint auditors and proceed in the cause. On this motion, the court was divided, and of course no order made. It further appears from the case, that after the settlement of the plaintiff’s debt, Robert Blair obtained a judgment and execution against the defendant, and under i-t, levied upon his property.
These’are the facts in the case as presented to us, and upon these facts, the creditors rest their motion for a mandamus to the Common Pleas of Warren, to proceed in the attachment, and appoint auditors.
The question which is here directly presented, is, whether a plaintiff in attachment, has a legal right to accept out of the defendant’s property, satisfaction for his debt, and discontinue his *155 suit, without- regard to other creditors, after the issuing or service of his writ It is a question of importance, and must be settled by our attachment act, and the rules of practice, where that is silent. This act requires from the plaintiff, an affidavit of the defendant’s indebtedness to him, before the writ can legally issue. . The service or execution of the writ shall bind the property ; on the return of the writ, public notice of the suit, is to be published by the clerk, and the court are to appoint auditors to adjust the plaintiff’s demand and the demands of other creditors who shall have applied to the court, or shall apply to the auditors for that purpose. It also provides, that if the defendant appear in any of the three terms, and accept a declaration at the suit of every or any one of said creditors, and enter into special bail, the writ shall he set aside. In addition to this, the supplement to the act, (passed in 1820,) requires the debtor to enter into bond, with surety, to the sheriff, conditioned for the return of the goods taken under the attachment, in case judgment shall be rendered for the plaintiff. One other provision of the statute is necessary to be referred to, in deciding this question, to wit: “that the plaintiff shall not discontinue his suit without the consent of, or satisfaction made to each of the creditors who shall have applied to the court or to the auditors in manner aforesaid.”
These are all the provisions of the act which bear upon the question before us; and from which I infer that the legislature had in view, two objects : first, to give the creditor of an absconding or non-resident debtor, a remedy or mode of recovering his debt, which by law was not otherwise provided for, or to compel him to appear and answer the demand. This is not confined to a single creditor, or to him who first sues out his writ. Any creditor may do it, which is equivalent to declaring, that every creditor may do it; and
Secondly, If the suit continues till the return of the writ and appointment of auditors, to secur-e to all the creditors, a dividend out of the debtor’s estate left, or abandoned, within the jurisdiction of rhe court, proportioned to their respective demands.
The first of these was unquestionably the primary object of this enactment, for it can hardly be supposed, that the legislature intended to make one creditor a guardian for the rights of *156 all the rest. The attaching creditor acts for himself, and for no one else in the first instance; he knows of no other interest than his own and the defendant’s, and can take notice of no other; if his own claim therefore, is satisfied, there is, and should be an end of his suit. He cannot recognize the claims of others, till they are presented under the act, and üpon the return of the writ. I can find in the statute, no provision, that the issuing of one attachment by a creditor, is a bar to any other creditor taking out another writ. Every creditor may issue his writ of attachment, but the court to which they are returned, will appoint auditors in one only, because such appointment affects all that the law requires.
Can a plaintiff in attachment, then, discontinue his suit brought for his own benefit, after it is commenced ? It is objected that the statute prohibits his doing so. It declares, “ that he shall not discontinue without the consent of, or satisfaction made to the creditors who shall have applied to the court, or to the auditors, in manner aforesaid, that is, such creditors as upon the return of the writ and the appointment of auditors, shall have made application. But it does not prohibit him from settling his claim before such application is made, and before other creditors have acquired a legal interest in the suit. And if he does receive satisfaction for his debt, the foundation of the suit, the defendant’s indebtedness is gone, and the suit is virtually at an end. It is true, the sheriff may by law be bound to return the writ, but if he return it satisfied, or if it otherwise appears, that the plaintiff’s claim is satisfied, the court ought to order a discontinuance. Such order is founded upon the satisfaction antecedently made. It is giving legal effect to the agreement of the parties, and that too, without prejudice to other creditors, who may, if they see proper, bring their own writ. Again, the defendant may put an end to the attachment, by appearing at any of the three terms, and entering into special bail to the plaintiff and such other creditors as shall have applied to the court, and having done so, no other creditors can afterwards come in, and require the suit to be proceeded in for their benefit. But I apprehend the defendant need not wait the return of the writ, to enter into special bail: he may do it upon the service of the writ, and before the rights of other creditors have attached ; and although such bail may be *157 excepted to, ai the term, yet if perfected, it takes effect from the date of the recognizance. If then he may stop the suit by entering into special bail to the plaintiff alone, may he not do so, by paying the plaintiff his demand ? I cannot bring my mind to the conclusion, that the legislature intended to restrain a defendant in attachment, from paying, and "the plaintiff from receiving the debt for which the suit is brought, at any time before the return of the writ: and upon such payment, the suit virtually terminates, requiring only a formal entry of the order of discontinuance in the minutes of the court. Upon this question I can find no adjudication in our own courts. The only case which I have seen at a]l applicable to the present, is that of Fosgate v. Mahon, Sheriff, 16 J. R. 162, where the court decided under the attachment law of New York, that until trustees are appointed, the remedy belongs to the individual creditor who sued out the attachment; and that he may thereby gain a preference if the debtor choose to give it. This decision however, it is admitted, is based upon a provision in the law of New York, which authorizes a supersedeas, if the debtor shall, before the appointment of trustees, give security to the creditor at whoso instance the writ issued, to appear and plead to any action to be brought against him by such creditor within six months, and pay what may be recovered. Although our statute does not in express terms allow a supersedeas, or direct a discontinuance, yet it does provide, that upon the defendant’s entering into special bail, and agreeing to accept a declaration &c. and entering into bond, the writ and all proceedings had under it, shall be set aside as to the suit in which such bail is given. This secures to the defendant, the right not only of contesting the plaintiff’s claim, or if admitted to be correct, the right of paying it off, and relieving his property from the attachment, if done before the rights of other creditors attach. I believe therefore, that the court of Common Plea-s did right in refusing to appoint auditors, and should have ordered a discontinuance of the suit, in conformity with the settlement between the parties, made before the return of the writ.
The fact of an intervening judgment, cannot affect this question, or change the construction of the statute. Robert Blair must be esteemed as acting as agent of the defendant, in the set *158 tlement of the suit; and his obtaining a judgment afterwards by confession or otherwise, cannot affect the case.
My opinion is, that the mandamus should be refused.

Mandamus ordered.

Cited in Del. Hoyo v. Brundred, Spencer 336; in part overruled in Duffin v. Wolf, 1 Zab. 479; Smith v. Warden, 6 Vr. 348.